TIMOTHY COURCHAINE
United States Attorney
District of Arizona
NEIL SINGH
Assistant United States Attorney
Arizona State Bar No. 021327
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
neil.singh@usdoj.gov
*Attorneys for Defendant United States*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Raul Mendez, | No. 2:25-cv-01048-SMB |
|---|---|
| Plaintiff, | |
| v. | **MOTION TO DISMISS** |
| United States of America, | |
| Defendant. | |

Plaintiff, a victim of a shooting at a private residence, has sued the United States because the shooter was a service member of the United States Army. No theory of Arizona tort law permits such a cause of action, even under a textbook application of *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339 (N.Y. 1928). Additionally, sovereign immunity bars such a claim under the private person analog provision of the Federal Tort Claims Act, as well as the Discretionary Function Exception. The Court should dismiss this action as a matter of law. Fed. R. Civ. P. 12(b)(1), 12(b)(6).

In compliance with LRCiv 12.1(c), the United States certifies that it has conferred with counsel about the aspects of this motion that assert Rule 12(b)(6), and Plaintiff has declined to amend the complaint. *See* Exhibits 1, 2.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Taking Plaintiff's allegations as true for purposes of a motion to dismiss, the allegations of his ten-page complaint are as follows. On the evening of July 3, 2022, Jason Hunt entered the family gathering of his neighbors and randomly opened fire on them, killing two people and injuring four others. Doc. 1, ¶ 9. Plaintiff survived with serious injuries. Doc. 1, ¶¶ 9-25. Hunt, Plaintiff alleges, was "an active duty service member" who had "psychological and mental concerns…" Doc. 1, ¶ 8. A few weeks before the shooting, on June 16, 2022, Hunt posted a photograph of firearms on his Instagram page and wrote the following caption: "Time to clean the toys!! Pew Pew." Doc. 1, ¶ 12. On June 29, 2022, Hunt posted again stating, "Just a night of cleaning my 2A, getting ready to celebrate our Independence Day!! Who's with me?? ususus." Doc. 1, ¶ 13. Plaintiff alleges, "upon information and belief" and without elaboration, that the Army "regularly performed psychological evaluations of Mr. Hunt." Doc. 1, ¶ 14. Plaintiff has included screenshots of two Instagram posts in the Complaint.

The above facts are the entirety of Plaintiff's factual basis for suing the United States. His legal theory is that the Instagram posts and some unspecified "psychological evaluations" meant that the Army "should have known and upon information and belief did know that emergent steps had to be taken to prevent" Hunt from "harming the public, including Plaintiff." Doc. 1, ¶ 15. Plaintiff believes, in other words, that the Army either should have monitored Hunt's Instagram posts, or *was* monitoring Hunt's Instagram posts. The logical premise of the Complaint, then, is that there is some sort of action that the Army should have taken that would have somehow prevented this random shooting from occurring. What this action would be, Plaintiff does not specify. The Complaint appears to concede that Hunt was not, at the time of the shooting, on an Army base, or acting on any orders of the Army. To the contrary, Hunt was a neighbor of the family where this shooting occurred, in a residential area of Surprise, Arizona. Doc. 1, ¶ 9.

Plaintiff's Complaint states only one count, which he labels as "Violation of Federal Tort Claims Act," and further citing (as part of that same one count), "negligence and negligent hiring training and supervision" (sic). Doc. 1 at 6.

**A.     Standard of Review.**

Generally, the United States has sovereign immunity against civil lawsuits. Congress has waived sovereign immunity as it chooses through passage of the Federal Tort Claims Act ("FTCA"), according to specified conditions. Plaintiff bears the burden of persuading this Court of subject matter jurisdiction under "the FTCA's general waiver of immunity." *Abbey v. United States*, 112 F.4th 1141, 1145 (9th Cir. 2024) (quotation omitted). The United States bear the burden of proving that a waiver exception applies. *Id.* Nonetheless, a waiver of the United States' sovereign immunity is to be strictly construed in favor of the sovereign. *E.V. v. Robinson*, 906 F.3d 1082, 1098 (9th Cir. 2018). The FTCA "did not waive the sovereign immunity of the United States in all respects; [and] Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)).

Rule 12(b)(1) is the appropriate rule of procedure for dismissal for lack of subject matter jurisdiction. *Lee v. United States Dep't of the Navy*, 716 F. Supp. 3d 911, 914 (S.D. Cal. 2024) (citing *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011)). Under this rule, a jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When the challenge is factual, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and the Court need not presume the truthfulness of the complaint allegations. *Id.* The Government asserts that this challenge here is facial.

The Government's challenge of Plaintiff's tort theory is more properly reviewed under Rule 12(b)(6), Fed. R. Civ. P. Although viewed under a different rule of procedure, the standard in this case is the same as the sovereign immunity analysis. "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

B.     **Plaintiff's Complaint Fails to State a Claim Under the *Iqbal* Standard.**

The United States views Plaintiff's Complaint as equally defective on at least three distinct issues of equal import. Any one of these three is fatal to this action. The *Iqbal* defect appears logical to turn to first, since the Complaint's broad failings that start with the *Iqbal* issue spill over into the remaining two issues of his motion: the private party analog, and the discretionary function exception. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-87 (2009). As such, the Court should construe this subsection of the brief under Fed. R. Civ. P. 12(b)(6).

In *Iqbal*, the Supreme Court reinforced one of its earlier holdings that plaintiffs in federal court must do more than posit "bare assertions" that are merely a "formulaic recitation of the elements" of a claim, under the Federal Rules of Civil Procedure. *Id.* at 681 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Allegations that are conclusory are insufficient. *Iqbal*, 556 U.S. at 681. The complaint at issue in *Iqbal*, for example, contained numerous facts, but when the Supreme Court attempted to tie those facts to the specific legal theories asserted in that complaint, such plausible applications of the facts to law were lacking. *Id.* at 682.

This is precisely Plaintiff's failure here. The FTCA adds an extra burden to any plaintiff by requiring them to show subject matter jurisdiction through the FTCA's specific subsections that preserve sovereign immunity. But here, Plaintiff has not even met his simpler burden: stating a proper and plausible theory of tort duties and causation between the 2022 shooting and the United States Army. The FTCA states, first, that Arizona state law governs the tort analysis of the facts in this complaint. *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992). Thus, Plaintiff must at least plausibly allege a workable factual-legal theory that meets Arizona's four basic elements for negligence: duty, breach, causation, and damages. *Quiroz v. ALCOA, Inc.*, 416 P.3d 824, 828, ¶ 7 (Ariz. 2018). Foreseeability as a legal concept underlies more than one of these factors, the *Quiroz* court held, including duty, breach, and causation. *Id.* at ¶¶ 8-9.

Arizona's appellate courts have examined the tort of negligence in the context of perpetrator shootings many times. None of those scenarios fit with Plaintiff's stated theories

here, due to their lack of specificity and lack of a factual basis. In *Martinez v. Woodmar IV Condominium HOA, Inc.*, for example, a plaintiff injured by a shooting in a parking lot sued a condo association for failing to prevent the attack. 941 P.2d 218, 207 (Ariz. 1997). The Arizona Supreme Court analyzed those facts in the context of duties owed by an owner or possessor of land, who "had control over the land." *Id.* Obviously, Plaintiff here cannot rely on *Martinez* because there is no allegation that the shooting occurred on land controlled by the Army. This begs the question: what line of tort cases *does* Plaintiff rely upon to sue the Army? It obviously could not be pursuant to *Hutcherson v. City of Phoenix*, where the families of shooting victims sued the City of Phoenix on a theory that a 911 operator failed to promptly dispatch police officers to prevent the shooting. 961 P.2d 449, 450-51 (Ariz. 1998). There was no equivalent of an Army 911 operator involved in the facts here.

Whatever Plaintiff's theory may have been had he amended the Complaint with more details, in any event, it appears that Arizona law would bar it anyway. In a case with significant parallels to this one, the Arizona Court of Appeals affirmed dismissal of a claim in which an active duty police officer, while off duty, shot and killed the victim. *Wertheim v. Pima County*, 122 P.3d 1, 2, ¶ 2 (Ariz. Ct. App. 2005). The plaintiffs sued the Tucson Police Department on grounds that the shooter was its employee, and Pima County on grounds that it had supervisory authority over the shooter. *Id.* Unlike here, the plaintiffs in *Wertheim* had numerous damning facts to support liability: Pima County and Tucson were aware of (1) a prior act of violence by the shooter against the victim, (2) a court had issued an order of protection and an injunction from harassment against the shooter, (3) a court prohibited the shooter from possessing firearms, (4) a victim contacted Pima County to report the shooter's stalking behavior, and (5) Tucson had earlier seized the shooter's gun but returned it to him, even though a city psychologist had advised the city not to do so. *Id.* at 2-3, ¶¶ 2-7.

The trial court dismissed the action as a matter of law and the Court of Appeals affirmed, holding:

> Although Dillard and the City and the County had an employment relationship, that relationship did not impose a duty on either to control the actions Dillard took here. Under the Restatement (Second) of Torts § 317

> (1965), an employment relationship imposes a duty on the employer "to exercise reasonable care ... to control his servant while acting outside the scope of his employment" only when the employee is on the employer's premises or using the employer's chattel. Neither was the case here. The gun Dillard used to kill Carter was Dillard's property, and Dillard was not on duty or on defendants' premises when he shot Carter.

*Id.* at 4, ¶ 12. "In Arizona, there is no duty to control the conduct of a third party" absent a "special relation" between the defendant and plaintiff. *Id.* at 3-4, ¶ 11 (quoting *Martinez*, 941 P.2d at 219-20)).

If Plaintiff believes that a "special relation" exists between himself and the Army, he has not alleged one. If Plaintiff knows of various aggravating facts similar to those identified in *Wertheim*, such as the fact that the Tucson Police Department handed the shooter's gun back to him over the advice of a psychologist, he has failed to identify or assert them here. 122 P.3d at 2-3. But even if he had, Arizona law rejects the existence of any legal duty by a defendant under such facts. *Id.* Plaintiff's Complaint simply fails to make the case for the existence of a legal duty owed by the Army to Plaintiff. Nor does he demonstrate any plausible showing of causation. What facts show that the Army failed Plaintiff in some particular way, which was foreseeable as to what Hunter did on July 3, 2022? The United States is unaware of any and respectfully submits that the Court will find none either, in searching the Complaint. This fails the requirements of *Iqbal*. Plaintiff's action should be dismissed as a matter of law, on this ground alone.

  C.  **<u>Sovereign Immunity and the FTCA Additionally Bar This Action.</u>**

Despite Plaintiff (through counsel) receiving two letters from the United States identifying FTCA issues, Plaintiff has made no effort to specify any further allegations that would meet his burden to show subject matter jurisdiction. *Abbey*, 112 F.4th at 1145. In addition to a plaintiff's burden to demonstrate jurisdiction in an FTCA case specifically, he must in general properly plead a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiff, here, has done neither. When a plaintiff suing the United States under the FTCA fails to do so, dismissal is warranted. *Sanchez v. United States*, 707 F. Supp. 2d 216, 226 (D. P.R. 2010) (citing *Iqbal* to hold that FTCA plaintiff held "the burden of establishing that subject

matter jurisdiction exists within the parameters of the 'plausibility' standard established by *Twombly* and *Iqbal*…").

Plaintiff's complaint simply lacks the needed precision, as amply shown earlier in this motion. And as the precedents cited below will demonstrate, the FTCA requires properly alleged factual assertions and legal theories to demonstrate subject matter jurisdiction, *in the complaint itself*. Here, the United States specifically believes that Plaintiff has not alleged any factual-legal theory that would overcome the Discretionary Function Exception ("DFE") of the FTCA, such as by finding a particular mandatory course of government conduct that the government violated. Nor has Plaintiff stated theories that meet the FTCA's requirement for a private person analog.

### 1. The FTCA's Private Person Analog Bars This Action.

Plaintiff has, secondly, failed to allege plausible facts to meet the FTCA's private person analog. This clause of the FTCA requires a plaintiff to allege "circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005) (internal quotations omitted). While the private analog need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). Thus, as a general matter, the FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2nd Cir. 1988) (internal quotations omitted).

The Ninth Circuit spelled out its standard for analyzing the private person analog in *Dugard v. United States*, where, as here, a perpetrator committed violent acts on an innocent

victim. 835 F.3d 915, 917-18 (9th Cir. 2016). The federal government can "never be exactly like a private actor," the court recognized, but "a court's job in applying the standard is to find the most reasonable analogy." *Id.* at 919. When identifying an analogous private party, the private party could in some circumstances be a public entity, "so long as the policies underlying them are applicable to private parties in the state as well." *Id.* at 920. In *Dugard*, the plaintiff was the kidnapping and torture victim of a federal parolee, the theory being that the United States could have and should have detected his criminal behavior. *Id.* On appeal, the Ninth Circuit observed that the closest private person analog to the government in this scenario would be "private criminal rehabilitation facilities." *Id.* at 919. Because California state law recognized no cause of action against such facilities by a person in the plaintiff's shoes, the Ninth Circuit affirmed dismissal of the action. *Id.* at 921-22.

Due in part to Plaintiff's lack of specificity, it is not possible to discern what private sector analogy he would assert here. But this is precisely why the Complaint is fatally defective for FTCA purposes. Every FTCA plaintiff holds the burden to assert that analogy as needed. In many cases, such as motor vehicle torts involving simple traffic accidents, the analogy is almost self-evident and does not require elaboration. In actions involving facts where the analogy is not so obvious, the burden lies with the plaintiff to properly assert and explain it. *Abbey*, 112 F.4th at 1145.

The United States does, to be clear, hold the burden of showing that an exception to the FTCA's waiver of immunity applies, once a plaintiff has met his burden. But the private person analog clause of the FTCA is not "an exception." The statute's plain wording shows that it is in the liability-imposing first paragraph, stating, "The United States shall be liable… in the same manner and to the same extent as a private individual under like circumstances…" 28 U.S.C. § 2674. It is thus solely and exclusively Plaintiff who holds the burden of showing jurisdiction. Plaintiff has failed to do so.

### 2. The FTCA's Discretionary Function Exception Bars This Action.

Finally, Plaintiff also appears to assert his claim for what he labels, "negligent hiring training and supervision" (sic). Doc. 1 at 6. Again, he fails to include any particular facts to

support a feasible theory that the Army was somehow negligent in "hiring" Hunt, negligent in training Hunt, or negligent in "supervising" Hunt in a manner that foreseeably resulted in the 2022 shooting. Regardless, FTCA claims premised on hiring, training, and supervision are generally barred by the DFE. That general bar applies here to require dismissal.

The DFE is statutory. The FTCA expressly excepts from its waiver of sovereign immunity "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a). The DFE "marks the boundary between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808. The Ninth Circuit recognizes the DFE as "an important exception to the FTCA." *Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020).

The Supreme Court has established a two-step process for evaluating whether a claim falls within the DFE. First, this Court should examine whether the government's actions are "discretionary in nature" and "acts that involve an element of judgment or choice." *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In making this examination, it is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig*, 467 U.S. at 813. "If there is ... a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks omitted).

Second, the Court examines "whether [the] judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The focus here is on "the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. The decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (quoting *Miller v. United States*, 163 F.3d 591, 593

1  (9th Cir.1998)). When a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. "Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).

In addition, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies…" *Varig Airlines*, 467 U.S. at 813. "Discretionary conduct is not confined to the policy or planning level…" *Gaubert*, 499 U.S. at 325. "[L]ow-level employees making discretionary day-to-day management decisions based on policy considerations also fall within the [DFE]." *Childers v. United States*, 40 F.3d 973, 974 n.1 (9th Cir. 1994), *as amended* (Jan. 17, 1995). Further, "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing *Gager v. United States*, 149 F.3d 918, 920–22 (9th Cir. 1998); *Nurse v. United States*, 226 F.3d 996 (9th Cir.2000); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1216–17 (D.C.Cir.1997); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995); *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir.1995); and *Attallah v. United States*, 955 F.2d 776, 784–85 (1st Cir.1992).

As the Ninth Circuit held in *Terbush*, the Court's inquiry here under the first step of the DFE analysis is to ask whether there is a "statute or policy directing mandatory and specific action…" 516 F.3d at 1129. If there is, "the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* Here, it is again Plaintiff's lack of specificity that is fatal to his action. In his sparse, ten-page Complaint, he has not bothered to even attempt to identify any mandatory course of instruction in particular that would fall outside the scope of the DFE. To the extent he generally theorizes that the Army had a general duty to reasonably train or supervise Hunter, the DFE, applied equally generally, bars that theory.

The second and final step of the DFE analysis requires the Court to ask whether the government's judgment "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. Here, the Court will find itself at a loss as to how to begin the analysis when Plaintiff has not pointed to any particular aspect of the Army's judgment, at the outset, that was negligent. To the extent that the Army has, again, a general obligation to oversee the conduct and behavior of Army service members when they are not on Army premises or in the midst of conducting Army operations, this clearly would be a function "of the kind that the discretionary function exception was designed to shield." *Id.* The DFE bars Plaintiff's action in its entirety.

## **CONCLUSION**

The United States respectfully requests the Court to dismiss this action as a matter of law, for the reasons stated.

Respectfully submitted on August 18, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

s/*Neil Singh*
NEIL SINGH
Assistant United States Attorney
*Attorneys for Defendant United States*