Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Raul Mendez, an individual,<br><br>  Plaintiff,<br><br>vs.<br><br>Does 1-5; The United States of America,<br><br>  Defendants. | Case No.: CV-25-01048-PHX-SMB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>(Assigned to the Honorable Susan M. Brnovich) |

Through undersigned counsel, Plaintiff Raul Mendez ("Plaintiff" or "Raul") hereby responds in opposition to the Motion to Dismiss filed by Defendant the United States of America ("Defendant" or the "U.S."). This Response is supported by the relevant parts of the record in this action and the Memorandum of points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND FACTS

As alleged in Plaintiff's Complaint – on the night of July 3, 2022, Jason Hunt, an active-duty member of the U.S. Army ("Defendant's Soldier" or "its Soldier"), shot and killed two people, and seriously injured four others, while at a neighbor's family gathering (the "Shooting"). Compl. ¶¶ 8-9, March 30, 2025, ECF No. 1. Raul was one of those shot and seriously injured – in fact, he lost an eye as a result. *See id.* ¶¶ 24-25.

In the days leading up to the Shooting, Defendant's Soldier "began displaying his guns publicly on Instagram with disturbing captions pointing to mental health decline and an increasing desire to use his weapons." *Id.* ¶ 11. On June 16, 2022, he posted a picture on Instagram of a stockpile of weaponry he had amassed, with the caption "Time to clean the toys!! Pew Pew." *Id.* ¶ 12. Then, on June 29, 2022, with the caption "getting ready to celebrate our Independence day!! Who's with me?? Ususus," he posted another picture of a cache of firearms in his possession, including black rifles. *See id.* ¶ 13.

Clearly, "[Defendant's Soldier] was deteriorating mentally and was displaying a propensity of violence and behavioral pattern of idolatry of weaponry with statements posted publicly that he was going to party with his weapons . . . ." *Id.* ¶ 34. Moreover, "[his] deteriorating mental health around weaponry was on public display such that it would have been impossible for his superiors and the [U.S.] Army to miss it and unconscionable for them to ignore it." *Id.* ¶ 18. In fact, "the [U.S.] Army and its members had seen this disturbing behavior, had knowledge of [his] declining mental health, and failed to act, intervene, provide services to [him], or report his behavior to the Federal Bureau of Investigation." *Id.* ¶ 19. Moreover, Defendant "regularly performed psychological evaluations" on its Soldier, and "these evaluations showed that [he] had potential mental disabilities that could result in harm to members of the public." *Id.* ¶¶ 14, 16. Accordingly, Defendant "***kn[e]w*** that emergent steps had to be taken to prevent [its Soldier] from harming the public, including [Raul]." *Id.* ¶ 15 (emphasis added).

Despite the fact that Army Regulation 40-501 requires referral of mentally or emotionally unfit soldiers for medical review and separation, and that Army Regulation

2

190-11 prohibits mentally unstable personnel from possessing or accessing firearms, Defendant and its employees neither referred its Soldier nor took steps to remove his access to firearms. Not only that, but Defendant and its employees failed to report its Soldier's increasingly disturbing behavior to any authorities, such as the FBI. *See id.* ¶¶ 33-35.

As a proximate result of Defendant's failures, Raul suffered severe injuries and damages, including the loss of an eye. *See id.* ¶¶ 25, 38.

## II.  LEGAL ARGUMENT

### A.  Standard of Review

The legal standard for motions to dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court. "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a motion to dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss,

the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

"[L]eave to amend must be given freely and liberally." *Ty Kirkpatrick v. Hubman*, No. CV-21-01048-PHX-DJH, at *8 (D. Ariz. Mar. 1, 2023) (emphasis added); *see also*, *e.g.*, *Olivas v. Nevada, ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 n.2 (9th Cir. 2017) (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003)); *see also* Fed. R. Civ. P. 15(a)(2). "[T]he Ninth Circuit has stated that Fed. R. Civ. P. 15(a)'s policy that leave to amend must be 'freely given when justice so requires,' must be applied with '**extreme liberality**' . . . ." *Keller v. United States*, No. CV-11-02345-PHX-PGR, at *5 (D. Ariz. June 28, 2016) (emphasis added) (internal citations omitted) (first quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Owens v. Kaiser Foundation*

4

*Health Plan, Inc.*, 244 F.3d 708, 709 (9th Cir.2001)).  Leave to amend is especially appropriate when, as is the case here, it is not beyond the scheduling order deadline for amending complaints and joining parties.  *See Greenburg v. Wray*, No. CV-22-00122-PHX-DLR, at *1 (D. Ariz. Jan. 9, 2023).  If this Court decides that Defendants' Motion should be granted in part or in full, Plaintiff respectfully requests leave to further amend his Complaint to address any deficiencies determined by this Court.

> **B.** ***Sheridan* Controls – The U.S. is Liable for its Own Negligence in Failing to Control a Dangerous Soldier In Possession of Firearms.**

Defendant argues that Plaintiff is proposing to hold it liable on completely novel legal grounds unsupported in law, and that it simply had no duty to Plaintiff.  Not so.  The viability of Plaintiff's negligence claims falls squarely within the ambit of the U.S. Supreme Court's opinion in *Sheridan v. United States*, 487 U.S. 392 (1988), which held that the negligence of U.S. service personnel in allowing a foreseeable violent act to be committed by an off-duty soldier may furnish a basis for U.S. liability to the victim.  *See id.* at 393.

In *Sheridan*, an extremely intoxicated naval soldier was discovered by fellow naval personnel "lying face down in a drunken stupor on the concrete floor of a hospital building" while off-duty.  *Id.* at 395.  They initially attempted to take him to the emergency room, but he broke free, and then outright fled when they saw he was in possession of a rifle.  *Id.* The naval personnel "neither took further action to subdue [the soldier], nor alerted the appropriate authorities that he was heavily intoxicated and brandishing a weapon." *Id.* Later that evening, the armed soldier fired several shots into an automobile on a nearby street, causing injuries and property damage.  *Id.* at 393-95.  The U.S. Supreme Court held

that in such a case, because "the [U.S.] has a duty to prevent a foreseeably dangerous individual from wandering about unattended," "the negligence of [U.S.] employees who allowed a foreseeable assault and battery to occur may furnish a basis for [U.S.] liability . . . ." *Id.* at 401-03.

This case is no different from *Sheridan*. The navy personnel in that case happened upon an extremely intoxicated soldier in possession of firearms, and failed to report him or take any further action. Similarly, here army personnel who regularly monitored and evaluated the Soldier, and thus knew or should have known – whether through his Instagram posts or otherwise – that he was amassing a stockpile of firearms and was mentally deteriorating, also failed to report him, refer him for treatment, restrict his access to firearms, or take any further action. Accordingly, just as the U.S. could be held liable for the negligence of the naval personnel in that case, Defendant can be held liable for the negligence of its army personnel who failed to take any steps to report its Soldier to authorities, to refer him for medical treatment, or to restrict his access to firearms.

### C. The FTCA's Private Person Analog Requirement Does Not Bar Plaintiff's Action.

Defendant argues, wrongly, that Plaintiff's claims are barred due to the FTCA's private person analog requirement of the FTCA. That requirement arises from the statute itself, as "[t]he FTCA gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, ***under circumstances where the United States, if a private person, would be liable*** to the claimant in accordance with the

6

law of the place where the act or omission occurred.'" *Sheridan*, 487 U.S. at 398 (emphasis added) (quoting 28 U.S.C. § 1346(b)). The statute authorizes recovery against the U.S. only "in the same manner and to the same extent as a ***private*** individual under like circumstances," 28 U.S.C. § 2674 (emphasis added), and "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA," *United States v. Olson*, 546 U.S. 43, 45-46 (2005) (internal quotations omitted). While the private analog need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Here, the applicable "persuasive analogy" would be to a suit against an owner of a private security company, for his and his employees' negligence in failing to act to prevent another security employee who they knew or had reason to know was mentally unbalanced and stockpiling firearms, from committing violent acts with those firearms while off-duty. No Arizona case has squarely addressed a situation with those facts. However, Arizona courts have held that an employer generally may be liable to injured third parties for its negligence in hiring, training, and/or supervising an employee who it knows or has reason to know is unfit and/or dangerous to the public, for that employee's off-duty intentional conduct against those third parties. *See Pruitt v. Pavelin*, 141 Ariz. 195, 200-203 (Ariz. App. 1984) (real estate company liable for its negligence in furthering intentional fraudulent acts committed by a former employee it trained, helped secure a real estate license, and had reason to believe was dishonest, because "[i]t was easily foreseeable that

7

an employee so casual with the truth would use her position to cheat members of the public with whom she dealt"); *McGuire v. Arizona Protection Agency*, 125 Ariz. 380, 609 P.2d 1080 (Ariz. App. 1980) (defendant employer who had contracted to install burglar alarm in plaintiff's home was liable for its negligence in hiring, training, and/or supervising an employee with a known history of criminal activity, where that employee returned to plaintiff's home after he was terminated, disconnected the alarm, and burgled the home). Given the foregoing precedent, an Arizona court confronted with a similar suit by a plaintiff injured by the violent act of an off-duty private security guard would likely hold that company liable for its negligence in failing to restrict, treat, and/or report that employee if it knew or should have known of his unbalanced and violent disposition. Therefore, the FTCA's private person analog requirement is satisfied in this case.

### D. The FTCA's Discretionary Function Exception Does Not Bar this Action.

Finally, Defendant argues that Plaintiff's claims are barred by the so-called "discretionary function exception" to the FTCA's waiver of sovereign immunity ("the "DFE"). Defendant is wrong.

The DFE is encapsulated in statute. The FTCA expressly excepts from its waiver of sovereign immunity "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). It "marks the boundary between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals," *United States v. S.A. Empresa de Viacao Aerea Rio*

*Grandense* (*Varig Airlines*), 467 U.S. 797, 808 (1984), and is recognized as "an important exception to the FTCA." *Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020).

For the DFE to exist, two requirements must be satisfied. First, the DFE "is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, because "the purpose of the [DFE] is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537).

Here, neither of the two above requirements are met. First, the U.S. and its employee personnel lacked discretion for failing to report, control, or treat its Soldier, as Army regulations imposed specific duties on personnel regarding fellow soldiers' fitness for duty, access to firearms, and psychological evaluations. Army Regulation 40-501 requires referral of mentally or emotionally unfit soldiers for medical review and separation, and Army Regulation 190-11 prohibits mentally unstable personnel from possessing or accessing firearms. These are not discretionary policy choices; they are mandatory safeguards designed to protect the public.

Because the conduct of the U.S. and its employees at issue did not involve choice or discretion, there is no need to move on to requirement two, and there can be no DFE. Nevertheless, even if discretion existed (and it did not), failing to respond to a known,

9

imminent risk of violence is surely not the type of policy judgment the DFE was intended to protect. Thus, the DFE's second requirement also is not present.

## III. CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's Motion to Dismiss, and rule that Plaintiff's claims for its and its employees' negligence in failing to take any action against a known risk of violence from a fellow Soldier must proceed.

**RESPECTFULLY SUBMITTED** this 26th day of September 2025.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiff*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Neil Singh
neil.singh@usdoj.gov
celescia.broughton@usdoj.gov
CaseView.ECF@usdoj.gov
**UNITED STATES ATTORNEY**
**DISTRICT OF ARIZONA**
Two Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4449
(602) 514-7500
*Attorneys for Defendant United States*

          /s/ Ben Dangerfield

11