TIMOTHY COURCHAINE
United States Attorney
District of Arizona
NEIL SINGH
Assistant United States Attorney
Arizona State Bar No. 021327
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
neil.singh@usdoj.gov
*Attorneys for Defendant United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Raul Mendez,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>United States of America,<br><br>　　　　　Defendant. | No. 2:25-cv-01048-SMB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendant United States of America replies as follows in support of its Motion to Dismiss (Doc. 11), to which Plaintiff has filed a response brief (Doc. 18).

The Government notes that the government shutdown disrupted the briefing schedule for this motion. The Government filed a request for a stay of briefing (Doc. 19), which this Court granted (Doc. 20), followed by a Notice of Resumption of Government Activities (Doc. 21). The Government has conferred with Plaintiff's counsel and represents to the Court that Plaintiff does not object to the filing of this brief on today's date.

///

# MEMORANDUM OF POINTS AND AUTHORITIES

There are three separate and independent grounds on which the Court can and should dismiss this action, with prejudice, articulated in Defendant's motion (Doc. 11). Plaintiff's response to each of those three falls short. <u>First</u>, in responding to Defendant's argument that the Complaint fails to meet the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Plaintiff's response brief fails to cite even a single Arizona tort case to rebut Defendant's argument on lack of causation and lack of foreseeability. <u>Second</u>, on the issue of the Federal Tort Claims Act's (FTCA) requirement of a private person analog, where Plaintiff holds the burden of showing that Arizona tort law supports an analogous cause of action against the Army for a shooting of this nature, Plaintiff cites a real estate transactional case and a burglar alarm case, neither of which are adequate analogies here. <u>Finally</u>, on the third issue involving the Discretionary Function Exception (DFE), Plaintiff cites for the first time a regulation not in his Complaint, Army Regulation 40-501, and now claims that the Army has "specific duties" that are relevant to here. But this point is both meritless and improperly made since Plaintiff failed to include it in the Complaint—a Complaint that the Government twice invited him to amend.

Plaintiff also argues for the opportunity to amend the Complaint, but the Government gave him that opportunity and he declined. The Motion to Dismiss should be granted, with prejudice.

### A.     **Plaintiff fails to meet the *Iqbal* standard**

The Government's argument that relies on *Iqbal*, 556 U.S. at 662, actually implicates two overlapping concepts: (1) the concept in *Iqbal* of adequately pleading a complaint that contains sufficient factual detail, and (2) the lack of any detail to support any particular cause of action under Arizona tort law. This action is not merely a simple tort action. It is an FTCA action that implicates complex questions of sovereign immunity. To demonstrate that Plaintiff had failed to show that sovereign immunity has been waived, the Government cited three pertinent Arizona tort decisions on the issue of shooting and gun violence liability. Doc. 11 at 4-5 (citing *Martinez v. Woodmar IV Condo. HOA, Inc.*, 941 P.2d 218, 207 (Ariz. 1997);

*Hutcherson v. City of Phoenix*, 961 P.2d 449, 450-51 (Ariz. 1998); *Wertheim v. Pima County*, 122 P.3d 1, 2 (Ariz. Ct. App. 2005), *rev. denied,* (Ariz. 2006)).

Plaintiff ignores these Arizona cases altogether, perhaps under a misguided belief that they are not as precedential as his citation of a 1988 U.S. Supreme Court decision, *Sheridan v. United States*, 487 U.S. 392 (1988). The FTCA requires this Court to look first to Arizona tort law. *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992) (cited at Doc. 11 at 4). Since Arizona law governs in part whether or not Plaintiff has adequately pled his Complaint, Plaintiff has in effect abandoned any rebuttals to the Government's points with respect to the three Arizona shooting tort cases, *Martinez*, *Hutcherson*, and *Wertheim*. In *Martinez*, 941 P.2d at 207, liability stemmed from the defendant's ownership of the land where the shooting occurred. Here the incident occurred in a private residence not owned by the Army. In *Hutcherson*, 961 P.2d at 450-51, a City of Phoenix 911 operator failed to dispatch police officers to prevent the shooting. Here, Plaintiff presents no theory that the Army received an emergency call about the shooter, analogous to the City of Phoenix's emergency dispatch system. And in *Wertheim*, 122 P.3d at 2, which is the closest parallel to the facts here, a Tucson off-duty police officer shot and killed a victim, which the Arizona Court of Appeals concluded *did not support a cause of action* under Arizona tort law.

That Plaintiff would ignore *Wertheim* alone is flatly and unforgivingly dispositive. *Wertheim* constitutes Arizona law on the issue of whether an employer is liable when an employee shoots a victim when the employee is not acting in the course and scope of his employment duties. *Id.* at 2. The Arizona Court of Appeals held that an employer in this scenario has no duty in tort to a shooting victim. *Id.* at 5, ¶ 12 ("an employment relationship imposes a duty on the employer 'to exercise reasonable care ... to control his servant while acting outside the scope of his employment' only when the employee is on the employer's premises or using the employer's chattel."). The Government explicitly challenged Plaintiff's tort theory, citing *Wertheim*, to which Plaintiff chose not to respond. *Wertheim* is controlling and bars Plaintiff's cause of action as a matter of law.

As for Plaintiff's reliance on *Sheridan*, 487 U.S. at 393, it has no bearing here. The

issue decided by the Supreme Court was the statutory interpretation of the intentional tort exception within the FTCA. *Id.* at 394 ("The District Court dismissed the action [on] the ground that the claim is barred by the intentional tort exception to the Federal Tort Claims Act."). Although the underlying facts of that case did involve a shooting, the legal question decided by the Supreme Court was whether the FTCA's intentional tort exception applied when a federal employee shot someone and the tort theory rested on a legal theory of negligence by the employee's government employer. *Id.* at 395 (referencing "the negligence of other Government employees who failed to prevent his use of the rifle."). *Sheridan* decided solely that a negligence theory premised on an intentional shooting is not barred by the FTCA's intentional tort exclusion, because the negligence tort consists of the employer's actions or omissions, not the employee's intentional act. *Id.* at 398-99 (distinguishing between two tortious acts, "one of which is an assault or battery and the other of which is a mere act of negligence.").

*Sheridan* has no bearing on principles of Arizona tort law, which the Supreme Court and Ninth Circuit make unequivocally clear is the guiding standard that applies to this Court. *Schwarder*, 974 F.2d at 1122; *United States v. Olson*, 546 U.S. 43, 46 (2005) (applying state law principles to FTCA liability of governmental entities); *see also, e.g., Pacheco v. United States*, 21 F.4th 1183, 1187 (9th Cir. 2022) (certifying a question of state tort law within the context of an FTCA action to the Washington Supreme Court). It is *Wertheim*, 122 P.3d at 2, that governs the question here, not *Sheridan*.

    **B.**    **Plaintiff failed to adequately plead facts supporting the FTCA's private person analog requirement.**

Plaintiff's arguments on the FTCA's private person analog fail in two respects. First, the Government cited two decisions pointing out that an FTCA plaintiff holds the burden of adequately meeting the private person analog *in the complaint*. Doc. 11 at 6-7 (citing *Sanchez v. United States*, 707 F. Supp. 2d 216, 226 (D. P.R. 2010), and *Abbey v. United States*, 112 F.4th 1141, 1145 (9th Cir. 2024)). Plaintiff ignores these decisions and appears to concede that he failed to assert any such facts or theories in the complaint. Second, Plaintiff's effort in his

response brief—that he did not undertake in his complaint—to now demonstrate a private person analog, fails on the merits anyway. The burden lies with a plaintiff to prove that the United States has waived sovereign immunity. *Abbey*, 112 F.4th at 1145.

Even as Plaintiff acknowledges his own burden to offer a "persuasive analogy" to liability against a private person under Arizona tort law (Doc. 11 at 7), the Court can easily conclude here that Plaintiff did not even attempt to do so in the Complaint (Doc. 1). Paragraphs 30 through 38 of the Complaint are the only articulation of Plaintiff's legal theory against the United States Army, and while they list a number of generic beliefs about different ways the Army allegedly violated duties, they fail to contain an assertion that would facially demonstrate to the Court that Arizona law contains an analog to support this cause of action. As the Government has demonstrated above, *Wertheim*, 122 P.3d at 2, holds to the contrary and rejects any such cause of action.

Ignoring *Wertheim*, Plaintiff cites two different Arizona cases to serve as his basis for the private person analog for the Army being held liable because an off-duty soldier perpetrated a shooting at a private residence. He first cites *Pruitt v. Pavelin*, a case in which "a real estate salesperson [defrauded] the seller of a restaurant by forging certain signatures on a sales contract and security documents." 685 P.2d 1347, 1350 (Ariz. Ct. App. 1984). He then cites *McGuire v. Arizona Protection Agency*, where an alarm system company hired a convicted felon who proceeded to burglarize a customer's residence. 609 P.2d 1080, 1081 (Ariz. Ct. App. 1980). The FTCA's private person analog requires a persuasive and close analogy under like circumstances. *See generally, e.g., Crider v. United States*, 885 F.2d 294, 299 (10th Cir. 1989) (dismissing FTCA claim where "[n]o serious comparison can be drawn between an employer-employee relationship and that of Landry and the park rangers"). Neither a real estate transaction nor the burglary of a home by an alarm system worker provide similar circumstances to the random shooting by Jason Hunt of Plaintiff at a private residence.

Even if the Court were to ignore *Wertheim* and Arizona tort principles, Plaintiff's cited cases are not persuasive when examining their merits. In *McGuire*, the Arizona Court of Appeals noted "the sensitive nature of the work and the temptations and opportunity attendant

1 thereto," creating "an especial temptation and opportunity for criminal misconduct" by any alarm system employee, if not properly vetted for criminal convictions. 609 P.2d at 1082. Plaintiff here is evidently a complete stranger to the U.S. Army: he was certainly not a customer who contacted the Army to protect his private home, and the Army did not send Hunt to that home to perform any Army function. The comparison to *McGuire* fails on its face.

*Pruitt*, similarly, is not a close call. 685 P.2d at 1350. There, a real estate firm hired a person despite knowing that she (a) had previously forged a real estate document for Coldwell Banker, (b) had been criminally convicted for passing an insufficient funds check, (c) was a defendant in a civil lawsuit involving yet another real estate transaction gone bad, and (d) did not even have a real estate license. *Id.* at 1350. To no one's surprise, the employee proceeded to commit real estate fraud against the plaintiff, Pruitt. *Id.* at 1355 ("It was easily foreseeable that an employee so casual with the truth would use her position to cheat members of the public with whom she dealt."). Applied here, Plaintiff would have the Court compare that fraud-perpetrating, criminally convicted, forgery-committing employee with Hunt, based solely on some scant Instagram quotes Plaintiff has cited in the Complaint. The comparison falls flat. And it collapses even further in light of *Wertheim*, 122 P.3d at 2.

### C. The Discretionary Function Exception Applies.

On the issue of the DFE, Plaintiff has yet again neglected to plead adequate facts in his complaint, even though the Government specifically pointed this out in its letter to counsel inviting him to amend. *See* Doc. 11-1 ("it does not appear that your complaint as currently worded reflects any DFE analysis."). The Government invited Plaintiff to amend his complaint. Plaintiff refused. This is a notable fact because Plaintiff's response brief contains allegations and theories that he chose not to include in his complaint. The FTCA and principles of sovereign immunity do not permit this tactic: a plaintiff suing the United States must establish his initial burden that the Government has waived sovereign immunity and that jurisdiction exists. *Abbey*, 112 F.4th at 1145. This issue is not governed by Rule 12(b)(6), but by Rule 12(b)(1), Fed. R. Civ. P.

The DFE bars claims in the general nature of negligent training, negligent hiring, and

negligent supervision. *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the [DFE] to shield."). Assessing whether an FTCA complaint meets the standard for avoiding the DFE bar requires examination of the factual allegations to see whether the plaintiff has asserted specific governmental, *mandatory* policies and directives that the Government violated. *Abbey*, 112 F.4th at 1145; *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008). The Court will find no mention of any such policies and directives in the Complaint. Doc. 1. It bears repeating that Plaintiff was put on notice of this issue, invited to amend the Complaint, and refused to do so. Doc. 11-1.

Only in Plaintiff's response brief to the Government's Motion to Dismiss has he now identified an alleged policy that he claims contains mandatory language that the Army violated. First, this is insufficient for satisfying the FTCA's pleading requirements as explained above. Second, even if Plaintiff had prepared his Complaint to adequately allege facts and details about his newly discovered policy, his DFE argument fails as a matter of law.[1] Plaintiff now cites Army Regulation 40-501 as the policy he maintains contains a specific directive that the Army violated. It is unknown which specific aspect of this large policy document Plaintiff relies on, since he fails to attach it as an exhibit to his response brief. If it is the 151-page document that seems to exist on the Internet as an unclassified document that is dated June 2017, Plaintiff has not pointed to any specific provision or page number within it. It appears to the Government's counsel that an Army regulation known as "40-501" actually exists in multiple variations, such as the Department of Defense's Southern Command equivalent of 40-501.[2]

---

[1] The Government notes that the Court need not even reach the DFE issue if it agrees with the Government's motion on either the issue of (1) *Iqbal* and the failure to state a claim under Arizona law, or (2) the FTCA's private person analog. Either one of these three issues is an independent basis on which the Court may dismiss this action.

[2] https://www.southcom.mil/Portals/7/Documents/SC%20REG%2040-501-Medical%20Suitability%20Screening_UPDATED_21FEB23.pdf?ver=DOLuGUtaX1quDzvSB-aYEQ%3D%3D (accessed on December 9, 2025)

While Plaintiff inexcusably fails to specify this point, it is clear that his argument fails anyway: he seeks to rely on some variation of this large and complex, 151-page Army regulation for the proposition that the Army had a mandatory duty to "report, control, or treat its Soldier," by identifying him as a "mentally or emotionally unfit" soldier and referring him "for medical review and separation…" Doc. 11 at 9. This allegation, loaded with sweeping assumptions that his Complaint did not mention, is premised on a few Instagram screenshots. Plaintiff's assumptions he invites the Court to assume as valid are that Hunt made some comments on his Instagram account, that the Army was somehow monitoring his Instagram posts, and that the Instagram posts are evidence of a dangerously, mentally unfit person. This multi-layered example of bootstrapping, to borrow a term appellate courts have used,[3] is not a substitute for facts or an adequately pled complaint.

### D. Plaintiff is not entitled to now amend the Complaint.

Plaintiff devotes almost a full page of argument to support his position that the Court should now permit him to amend the Complaint, which would waste considerable time of the Court and Defendant, in violation of the local rules. The very purpose of LRCiv 12.1(c) is to allow a plaintiff to consider the defendant's position that a motion to dismiss may be viable, thereby allowing for time to amend the complaint, rather than proceeding with full briefing on a motion to dismiss, only to start over completely. The Government's June 16, 2025 letter expressly invited Plaintiff to amend his complaint. Doc. 11-1 (Exhibit 1). The Government sent Plaintiff a second letter on July 29, 2025, again inviting him to amend the Complaint. See Exhibit 1, attached.[4] Plaintiff's citation of federal standards for granting leave to amend freely is irrelevant here. He declined the opportunity to amend despite having ample time to do so, and nor does he make a showing that an amendment would be anything other than futile.

---

[3] *People v. Chun*, 203 P.3d 425, 435 (Calif. 2009) ("This kind of bootstrapping finds support neither in logic nor in law."); *People v. Dumas*, 595 N.Y.S.2d 644, 647 (N.Y. Sup. Ct. 1992) (rejecting an "impermissible 'bootstrapping' of presumptions").

[4] The Government erroneously filed the June 16, 2025 letter as both Exhibits 1 and 2 to the Motion to Dismiss. The July 29, 2025 letter was intended to be Exhibit 2. It is now filed with this reply brief.

# CONCLUSION

Plaintiff's Complaint fails to state a claim under Arizona tort law, in violation of *Iqbal*, 556 U.S. at 662. The Complaint additionally fails to allege facts that meet the private person analog requirement of the FTCA statutory scheme. It further fails to allege facts that show any plausible theory that is not barred by the DFE. As such, the Court should dismiss this action, with prejudice, and deny leave to amend the complaint on grounds that Plaintiff was given the opportunity to do so and declined it.

Respectfully submitted on December 10, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

s/*Neil Singh*
NEIL SINGH
Assistant United States Attorney
*Attorneys for Defendant United States*