TIMOTHY COURCHAINE
United States Attorney
District of Arizona
NEIL SINGH
Assistant United States Attorney
Arizona State Bar No. 021327
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
neil.singh@usdoj.gov
*Attorneys for Defendant United States*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raul Mendez,<br><br>           Plaintiff,<br><br>      v.<br><br>United States of America,<br><br>           Defendant. | No. 2:25-cv-01048-SMB<br><br>**MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

On February 20, 2026, this Court held after reviewing Plaintiff's Complaint that, simply, the Complaint "fails to adequately allege a negligence claim." Doc. 24 at 5. This defect persists with the First Amended Complaint (FAC), despite Plaintiff's efforts to insert additional facts into his pleading. Ironically, while a complaint is not necessarily a vessel for asserting legal argument, the FAC here asserts a 2023 Arizona Supreme Court decision as if it supports Plaintiff's tort theory. Doc. 25, FAC, ¶ 72 (citing *Avitia v. Crisis Prep. & Recovery Inc.*, 536 P.3d 776 (Ariz. 2023)). But *Avitia* actually overturned a 37-year-old precedent in Arizona regarding the duty owed by mental health professionals to third parties, making it even clearer that the United States cannot be held liable for Jason Hunt's random act of violence in this case. The FAC's legal theory continues to fail to assert an adequate claim under Arizona tort law. This action should be dismissed as a matter of law.

## MEMORANDUM OF POINTS AND AUTHORITIES

Taking Plaintiff's allegations as true for purposes of a motion to dismiss, the allegations of the FAC are as follows. Doc. 25. On the evening of July 3, 2022, Jason Hunt entered the family gathering of his neighbors and randomly opened fire on them, killing two people and injuring four others. Doc. 25, ¶ 9. Plaintiff survived with serious injuries. Doc. 25, ¶¶ 84-87. Plaintiff's original Complaint had asserted a set of facts that focused on some inane social media (Instagram) posts by Hunt. In the FAC, Plaintiff does repeat those fact assertions, but has now added new allegations about the known medical and psychological condition of Hunt leading up to the shooting.

With respect to Instagram posts, Plaintiff again asserts that, a few weeks before the shooting, Hunt posted a photograph of firearms on his Instagram page and wrote the following caption: "Time to clean the toys!! Pew Pew." Doc. 25, ¶ 12. Ten days later, Hunt posted again stating, "Just a night of cleaning my 2A, getting ready to celebrate our Independence Day!! Who's with me?? ususus."  Doc. 25, ¶ 13. Plaintiff alleges, as he did in the Complaint, "upon information and belief," that the Army "regularly performed psychological evaluations of Mr. Hunt." Doc. 25, ¶ 14.

As to Plaintiff's new allegations in the FAC, they provide additional detail about Hunt's psychological and medical history, while falling short of establishing any plausible causation theory under Arizona tort law. Plaintiff alleges that Hunt served combat deployments in Iraq and Afghanistan. Doc. 25, ¶ 22. His most recent deployment was in 2012. Doc. 25, ¶ 27. Hunt lost a friend at some unknown point in time due to kidney failure, and Hunt "planned to cut back on drinking." *Id.* Following the shooting and Hunt's death, Plaintiff alleges that the Medical Examiner found various substances in Hunt's blood, including medications used to treat depression, obsessive-compulsive disorder, panic disorder, premenstrual dysphoric disorder, posttraumatic stress disorder, and social anxiety disorder. Doc. 25, ¶ 30. Plaintiff further alleges that Hunt's blood alcohol concentration at the time of death was 0.262. Doc. 25, ¶ 43.

Plaintiff asserts, without specifying any particular person at the Army, that "Hunt's

chain of command at the Surprise Army Recruiting Station"[1] had "full legal authority" to access Hunt's medical records "at any time," insinuating that such persons within the chain of command could have and should have stopped Hunt from harming Plaintiff in the July 3, 2022 shooting. Doc. 25, ¶ 43. Plaintiff next alleges that Hunt "staged a table in his residence" for two weeks prior to the shooting. Doc. 25, ¶ 53. Hunt displayed weapons on the table to his wife and to another neighbor. Doc. 25, ¶¶ 53-56.

Plaintiff's FAC, like his initial Complaint, states only one count, which he labels as "Violation of Federal Tort Claims Act," and further citing (as part of that same one count), "negligence and negligent hiring training and supervision" (sic). Doc. 25 at 16.

A.    **Standard of Review.**

Generally, the United States has sovereign immunity against civil lawsuits. Congress has waived sovereign immunity as it chooses through passage of the Federal Tort Claims Act ("FTCA"), according to specified conditions. Plaintiff bears the burden of persuading this Court of subject matter jurisdiction under "the FTCA's general waiver of immunity." *Abbey v. United States*, 112 F.4th 1141, 1145 (9th Cir. 2024) (quotation omitted). The United States bears the burden of proving that a waiver exception applies. *Id.* Nonetheless, a waiver of the United States' sovereign immunity is to be strictly construed in favor of the sovereign. *E.V. v. Robinson*, 906 F.3d 1082, 1098 (9th Cir. 2018). The FTCA "did not waive the sovereign immunity of the United States in all respects; [and] Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)).

Rule 12(b)(1) is the appropriate rule of procedure for dismissal for lack of subject matter jurisdiction. *Lee v. United States Dep't of the Navy*, 716 F. Supp. 3d 911, 914 (S.D. Cal. 2024)

---

[1] In passing the Federal Tort Claims Act, Congress was careful and deliberate in authorizing only *respondeat superior* liability claims against the government, not institutional torts. *Laird v. Nelms*, 406 U.S. 797 (1972). FTCA plaintiffs are obligated to specify each individual federal employee who committed the tort that is the subject of every FTCA action.

(citing *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011)). Under this rule, a jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When the challenge is factual, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and the Court need not presume the truthfulness of the complaint allegations. *Id.*

The Government's challenge of Plaintiff's tort theory is more properly reviewed under Rule 12(b)(6), Fed. R. Civ. P. Although viewed under a different rule of procedure, the standard in this case is the same as the sovereign immunity analysis. "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

**B.**       **The FAC Fails to State a Claim Under the *Iqbal* Standard.**

The United States' first Motion to Dismiss argued that the Complaint should be dismissed because Plaintiff failed to properly assert a tort claim under Arizona law, and furthermore, whatever tort duties Plaintiff seemed to be alleging were covered under the Discretionary Function Exception of the Federal Tort Claims Act. The Court agreed with those arguments in its ruling. Those arguments still apply with equal force to the FAC, and the United States thus adopts them here again. Plaintiff appears to have only weakened his legal arguments on the tort issue, however, so the United States turns to that first.

As firmly established by now, Arizona state law governs the tort analysis of the facts in this FAC. *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992). Thus, Plaintiff must at least plausibly allege a workable factual-legal theory that meets Arizona's four basic elements for negligence: duty, breach, causation, and damages. *Quiroz v. ALCOA, Inc.*, 416 P.3d 824, 828, ¶ 7 (Ariz. 2018). Foreseeability as a legal concept underlies more than one of these factors, the *Quiroz* court held, including duty, breach, and causation. *Id.* at ¶¶ 8-9.

Arizona's appellate courts have examined the tort of negligence in the context of perpetrator shootings many times. None of those scenarios fit with Plaintiff's stated theories

here, due to their lack of specificity and lack of a factual basis. This was true in the Complaint, and it remains true in the FAC. In *Martinez v. Woodmar IV Condominium HOA, Inc.*, a plaintiff injured by a shooting in a parking lot sued a condo association for failing to prevent the attack. 941 P.2d 218, 219 (Ariz. 1997). The Arizona Supreme Court analyzed those facts in the context of duties owed by an owner or possessor of land, who "had control over the land." *Id.* Obviously, Plaintiff here cannot rely on *Martinez* because there is no allegation that the shooting occurred on land controlled by the Army. This begs the question: what line of tort cases *does* Plaintiff rely upon to sue the Army? It obviously could not be pursuant to *Hutcherson v. City of Phoenix*, where the families of shooting victims sued the City of Phoenix on a theory that a 911 operator failed to promptly dispatch police officers to prevent the shooting. 961 P.2d 449, 450-51 (Ariz. 1998). There was no equivalent of an Army 911 operator involved in the facts here.

Before Plaintiff amended the Complaint, the United States was left to speculate that his best tort theory may have been premised on an employer-employee context as stated by the Arizona Court of Appeals in *Wertheim v. Pima County*, 122 P.3d 1, 2, ¶ 2 (Ariz. Ct. App. 2005). There, plaintiffs sued the Tucson Police Department on grounds that the shooter was its employee, and sued Pima County on grounds that it had supervisory authority over the shooter. *Id.* Unlike here, the plaintiffs in *Wertheim* had numerous damning facts to support liability: Pima County and Tucson were aware of (1) a prior act of violence by the shooter against the victim, (2) a court had issued an order of protection and an injunction from harassment against the shooter, (3) a court prohibited the shooter from possessing firearms, (4) a victim contacted Pima County to report the shooter's stalking behavior, and (5) Tucson had earlier seized the shooter's gun but returned it to him, even though a city psychologist had advised the city not to do so. *Id.* at 2-3, ¶¶ 2-7.

The trial court dismissed the action as a matter of law and the Court of Appeals affirmed, holding:

> Although Dillard and the City and the County had an employment relationship, that relationship did not impose a duty on either to control the actions Dillard took here. Under the Restatement (Second) of Torts § 317

(1965), an employment relationship imposes a duty on the employer "to exercise reasonable care ... to control his servant while acting outside the scope of his employment" only when the employee is on the employer's premises or using the employer's chattel. Neither was the case here. The gun Dillard used to kill Carter was Dillard's property, and Dillard was not on duty or on defendants' premises when he shot Carter.

*Id.* at 4, ¶ 12. "In Arizona, there is no duty to control the conduct of a third party" absent a "special relation" between the defendant and plaintiff. *Id.* at 3-4, ¶ 11 (quoting *Martinez*, 941 P.2d at 219-20)).

If Plaintiff believes that a "special relation" exists between himself and the Army, he did not allege one in the Complaint, and he has still not done so in the FAC. If Plaintiff knows of various aggravating facts similar to those identified in *Wertheim*, such as the fact that the Tucson Police Department handed the shooter's gun back to him over the advice of a psychologist, he has failed to identify or assert them here. 122 P.3d at 2-3. But even if he had, Arizona law rejects the existence of any legal duty by a defendant under such facts. *Id.* Plaintiff's FAC simply fails to make the case for the existence of a legal duty owed by the Army to Plaintiff. Nor does he demonstrate any plausible showing of causation. What facts show that the Army failed Plaintiff in some particular way, which was foreseeable as to what Hunt did on July 3, 2022? The United States is unaware of any and respectfully submits that the Court will find none either, in searching the FAC. It is thus clear that Plaintiff, in the FAC, neither can rely and apparently does not even attempt to rely on an employer-employee theory to sue the United States for Hunt's shooting rampage.

This leaves Plaintiff solely with the theory that the Arizona Supreme Court has described in *Avitia*: a tort theory premised on a psychologist-patient context with duties owed to third parties. *Avitia*, 536 P.3d at 780-85. Plaintiff's reliance on this case in his FAC is flawed, because *Avitia* squarely rejects his position. The facts of *Avitia* arose from allegations that mental health professionals failed to report child abuse or neglect to the state, allegedly resulting in the children's murder. *Id.* at 778-80. The mental health professionals argued that Arizona law did not impose on them a "duty to report about possible *future* abuse." *Id.*, ¶ 18 (emphasis in original). The plaintiff argued that they "had a duty… to report neglect of the

children to a peace officer." *Id.*, ¶ 19. The Arizona Supreme Court then engaged in a lengthy analysis of the history of duties owed under tort in Arizona, by mental health professionals to third parties. That analysis concluded with a rejection of the plaintiff's arguments, and a conclusion that a mental health provider only owes duties when two conditions are present:

1. The patient has communicated to the mental health provider an explicit threat of imminent serious physical harm or death ***to a clearly identified or identifiable victim or victims***, and the patient has the apparent intent and ability to carry out such threat.
2. The mental health provider fails to take reasonable precautions.

*Id.*, ¶ 30 (quoting Ariz. Stat. Rev. § 36-517.02(A)) (emphasis added).

Applying *Avitia* and § 36-517.02(A) here, Plaintiff does not even allege in the FAC that Hunt communicated to any mental health provider at the Army "an explicit threat of imminent serious physical harm or death to a clearly identified or identifiable victim or victims…" As a matter of law, the alleged facts of this case do not arise to a tort claim for a psychologist-patient incident resulting in injury to third parties, under Arizona law.

Just as Plaintiff failed to assert in the Complaint, in the FAC he has not identified any Arizona tort theory under which the Army could be liable for the random act of violence perpetrated by Hunt. The shooting did not occur on Army property. Hunt was not performing duties for the Army at the time of the shooting. Neither Plaintiff nor any of his relatives in the home had contacted the Army previously to report stalking behavior or any other warnings of Hunt's imminent violence. And Plaintiff has failed to allege that Hunt communicated any specific warnings that he intended to harm Plaintiff in particular by identifying him, as required by *Avitia*, 536 P.3d at 780-85. Plaintiff's tort theory against the Army and the United States fails as a matter of law.

C.    <u>**The FTCA's Private Person Analogue Bars This Action.**</u>

Plaintiff has failed to allege plausible facts to meet the FTCA's private person analogue. Although the United States asserted this argument in its first Motion to Dismiss, Plaintiff does not meaningfully remedy the problem in his FAC. This clause of the FTCA requires a plaintiff to allege, in the pleading itself, "circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or

omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45- 46 (2005) (internal quotations omitted). While the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). Thus, as a general matter, the FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2nd Cir. 1988) (internal quotations omitted).

The Ninth Circuit spelled out its standard for analyzing the private person analogue in *Dugard v. United States*, where, as here, a perpetrator committed violent acts on an innocent victim. 835 F.3d 915, 917-18 (9th Cir. 2016). The federal government can "never be exactly like a private actor," the court recognized, but "a court's job in applying the standard is to find the most reasonable analogy." *Id.* at 919. When identifying an analogous private party, the private party could in some circumstances be a public entity, "so long as the policies underlying them are applicable to private parties in the state as well." *Id.* at 920. In *Dugard*, the plaintiff was the kidnapping and torture victim of a federal parolee, the theory being that the United States could have and should have detected his criminal behavior. *Id.* On appeal, the Ninth Circuit observed that the closest private person analogue to the government in this scenario would be "private criminal rehabilitation facilities." *Id.* at 919. Because California state law recognized no cause of action against such facilities by a person in the plaintiff's shoes, the Ninth Circuit affirmed dismissal of the action. *Id.* at 921-22.

Here, the closest Plaintiff comes in the FAC to asserting an analogy is his citation to *Avitia*, 536 P.3d at 780-85, in paragraph 72 of the FAC. Doc. 25, ¶ 72. As discussed at length above, *Avitia* eliminated a cause of action that had previously existed under Arizona tort law,

- 8 -

so Plaintiff's reliance on it is misplaced.

The burden lies with the plaintiff to properly assert and explain what the private person analogue is in an FTCA case. *Abbey*, 112 F.4th at 1145. The United States does, to be clear, hold the burden of showing that an exception to the FTCA's waiver of immunity applies, once a plaintiff has met his burden. But the private person analogue clause of the FTCA is not "an exception." The statute's plain wording shows that it is in the liability-imposing first paragraph, stating, "The United States shall be liable… in the same manner and to the same extent as a private individual under like circumstances…" 28 U.S.C. § 2674. It is thus solely and exclusively Plaintiff who holds the burden of showing jurisdiction. Plaintiff has failed to do so. Because Plaintiff fails to meet this threshold showing, the FAC is defective and should be dismissed.

### 1. **The FTCA's Discretionary Function Exception Bars This Action.**

Finally, Plaintiff continues to appear to assert his claim for what he labels, "negligent hiring training and supervision" (sic). Doc. 25 at 16. Again, he fails to include any particular facts to support a feasible theory that the Army was somehow negligent in "hiring" Hunt, negligent in training Hunt, or negligent in "supervising" Hunt in a manner that foreseeably resulted in the 2022 shooting. Regardless, FTCA claims premised on hiring, training, and supervision are generally barred by the DFE. That general bar applies here to require dismissal.

The DFE is statutory. The FTCA expressly excepts from its waiver of sovereign immunity "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The DFE "marks the boundary between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808. The Ninth Circuit recognizes the DFE as "an important exception to the FTCA." *Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020).

The Supreme Court has established a two-step process for evaluating whether a claim falls within the DFE. First, this Court should examine whether the government's actions are

"discretionary in nature" and "acts that involve an element of judgment or choice." *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In making this examination, it is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig*, 467 U.S. at 813. "If there is ... a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks omitted).

Second, the Court examines "whether [the] judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The focus here is on "the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. The decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir.1998)). When a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. "Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).

In addition, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies…" *Varig Airlines*, 467 U.S. at 813. "Discretionary conduct is not confined to the policy or planning level…" *Gaubert*, 499 U.S. at 325. "[L]ow-level employees making discretionary day-to-day management decisions based on policy considerations also fall within the [DFE]." *Childers v. United States*, 40 F.3d 973, 974 n.1 (9th Cir. 1994), *as amended* (Jan. 17, 1995). Further, "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*,

228 F.3d 944, 950 (9th Cir. 2000) (citing *Gager v. United States*, 149 F.3d 918, 920–22 (9th Cir. 1998); *Nurse v. United States*, 226 F.3d 996 (9th Cir.2000); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1216–17 (D.C.Cir.1997); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995); *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir.1995); and *Attallah v. United States*, 955 F.2d 776, 784–85 (1st Cir.1992).

As the Ninth Circuit held in *Terbush*, the Court's inquiry here under the first step of the DFE analysis is to ask whether there is a "statute or policy directing mandatory and specific action…" 516 F.3d at 1129. If there is, "the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* Here, it is again Plaintiff's lack of specificity that is fatal to his action. In his sparse, ten-page FAC, he has not bothered to even attempt to identify any mandatory course of instruction in particular that would fall outside the scope of the DFE. To the extent he generally theorizes that the Army had a general duty to reasonably train or supervise Hunt, the DFE, applied equally generally, bars that theory.

The second and final step of the DFE analysis requires the Court to ask whether the government's judgment "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. Here, the Court will find itself at a loss as to how to begin the analysis when Plaintiff has not pointed to any particular aspect of the Army's judgment, at the outset, that was negligent. To the extent that the Army has, again, a general obligation to oversee the conduct and behavior of Army service members when they are not on Army premises or in the midst of conducting Army operations, this clearly would be a function "of the kind that the discretionary function exception was designed to shield." *Id.* The DFE bars Plaintiff's action in its entirety.

### CONCLUSION

The United States respectfully requests the Court to dismiss this action as a matter of law, for the reasons stated.

Respectfully submitted on July 31, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

s/*Neil Singh*
NEIL SINGH
Assistant United States Attorney
*Attorneys for Defendant United States*