Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Raul Mendez, an individual,<br>Plaintiff,<br>vs.<br>Does 1-5; The United States of America,<br>Defendants. | Case No.: CV-25-01048-PHX-SMB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable Susan M. Brnovich) |

Through undersigned counsel, Plaintiff Raul Mendez ("Plaintiff" or "Raul") responds in opposition to the Motion to Dismiss (the "Motion"), ECF No. 39, his First Amended Complaint (the "FAC"), ECF No. 25, filed by Defendant the United States of America ("Defendant" or the "U.S."). The Motion should be denied. This Response is supported by the record in this action and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Court dismissed the original Complaint because it pleaded too little. The Complaint rested on two Instagram posts, allegations made on information and belief, and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

regulations that appeared nowhere in the pleading itself. ECF No. 24 at 6-7. The Court granted leave to amend, and Plaintiff amended. The First Amended Complaint ("FAC"), ECF No. 25, now pleads a decade of documented psychiatric treatment by the Army's own medical providers, an Army-prescribed medication regimen whose confirmed blood levels exceeded the reported range for patients on the maximum therapeutic dose, weeks of visible weapons staging known to witnesses, and the specific, mandatory Army directives that required referral, evaluation, and weapons restriction. FAC ¶¶ 22-56, 61-70.

The Motion barely engages with those new allegations. It reargues the first motion, asks the Court to resolve breach and causation questions on the pleadings, and builds its duty argument on a misreading of *Avitia v. Crisis Preparation and Recovery Inc.*, 536 P.3d 776 (Ariz. 2023). *Avitia* did not abolish mental health providers' duties to third parties. It reaffirmed them, on grounds of special relationship and public policy rather than foreseeability. *Id.* at 784-85, ¶¶ 40-43. Each of the Motion's three arguments fails, and the Motion should be denied.

## II. <u>BACKGROUND</u>

On the night of July 3, 2022, Jason Hunt, an active-duty U.S. Army recruiter, walked into his neighbor's family gathering in Surprise, Arizona and opened fire, killing two people and seriously injuring four others. FAC ¶ 9. Raul was among the wounded. He has endured surgeries, therapy, and emotional trauma, and he permanently lost one of his eyes. *Id.* ¶¶ 84-87.

Hunt was not a stranger to the Army's medical system. For roughly two years before the shooting he served as an active-duty recruiter at the Surprise Army Recruiting Station,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

working in a civilian-facing office under the direct supervision of a Recruiting Station Commander, a Battalion Commander, and a chain of command with regular, in-person contact and full command authority over him. *Id.* ¶¶ 20-21. He was a combat veteran of Iraq and Afghanistan, subject to mandatory post-deployment health reassessment protocols requiring behavioral health screenings at defined intervals. *Id.* ¶¶ 22-24. Those obligations produced a documented psychiatric history within the Army's Military Health System. *Id.* ¶ 24.

The Army itself confirmed that history after the shooting. Working with Surprise Police Department investigators, Army personnel produced a mental health history showing that Hunt had received treatment for nearly a decade before the shooting, with entries spanning post-deployment behavioral health screenings in 2012 through a final appointment on May 2, 2022, two months before the shooting. *Id.* ¶¶ 25-27. In February 2022, the record indicates, Hunt denied suicidal ideation, intent, or plans despite reporting circumstances the produced record **redacts**. *Id.* ¶ 28.

Forensic toxicology confirmed what that treatment history meant in practice. At his death Hunt's blood contained sertraline, an SSRI antidepressant prescribed for depression and related disorders, at levels exceeding the reported range for adults taking the maximum prescribed daily dose; amphetamine, a Schedule II controlled substance requiring mandatory prescriber monitoring; and amlodipine. *Id.* ¶¶ 29-41. His blood alcohol concentration was 0.262, more than three times Arizona's legal driving limit, with vitreous fluid indicating a peak near 0.39 that evening. *Id.* ¶¶ 43-44. As an active-duty soldier, Hunt's prescriptions were issued through and tracked by the Army's Military Health

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

System, and his Army prescribing physicians were obligated to monitor the combination of an SSRI, a Schedule II stimulant, and a cardiovascular medication against documented heavy alcohol use. *Id.* ¶¶ 34-42, 46.

The danger was not hidden. For approximately two weeks before the shooting, Hunt staged a table in his residence displaying rifles, a shotgun, two holstered handguns, and roughly 1,000 rounds of loaded ammunition, as confirmed by witness statements to police. *Id.* ¶¶ 53-55. That progressive weapons-staging behavior, combined with his public Instagram posts of his firearms cache, was observable to the Army colleagues and supervisors who had contact with him during that period. *Id.* ¶¶ 12-13, 56. Under the military command exception to HIPAA, Hunt's chain of command had full legal authority to access his complete psychiatric records at any time. *Id.* ¶¶ 50-51. Arizona has no red flag law; the Army was the only institution with both knowledge of Hunt's psychiatric profile and legal authority to act. *Id.* ¶¶ 77-78.

The FAC also identifies, by name and paragraph, the mandatory directives that governed the Army's obligations: Army Regulation 40-501, whose ¶ 3-3 mandates that soldiers with a disqualifying medical condition "will be referred to DES," the Disability Evaluation System; Army Regulation 190-11, addressing command restriction of a soldier's weapons access when fitness is in question; Department of Defense Instruction 6490.04, establishing mandatory protocols for command-directed behavioral health evaluations; and Army Regulation 600-20. *Id.* ¶¶ 61-70.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## III. LEGAL STANDARD

To survive Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a standard that "is not akin to a 'probability requirement,'" though there must be more than a mere "sheer possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Government's jurisdictional challenge is a facial one, ECF No. 24 at 4:8-10, so the Court accepts the FAC's allegations as true for that inquiry as well. And on the discretionary function exception to the FTCA's general waiver of sovereign immunity, the U.S. bears the burden: a plaintiff invokes jurisdiction by pleading a claim facially outside the exception, and the Government must then prove the exception applies. *See Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992).

## IV. ARGUMENT

### A. The FAC Plausibly Alleges a Duty Under Arizona Law.

Arizona's duty framework is settled. Duty "is based on either special relationships recognized by the common law or relationships created by public policy," and "the primary sources for identifying public policy are state and federal statutes." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827, ¶ 2 (Ariz. 2018). Foreseeability plays no role in the duty analysis; it "is more properly applied to the factual determinations of breach and causation," which belong to the jury. *Gipson v. Kasey*, 150 P.3d 228, 231, ¶¶ 15, 17 (Ariz. 2007). That framework matters here, because most of the Motion's duty section is not about duty at all. Its repeated

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

refrain that the Army lacked notice, that the posts were innocuous, and that no facts show the Army "failed Plaintiff in some particular way, which was foreseeable," Mot. at 6, argues breach and causation. Those are fact questions the Court does not resolve on a motion to dismiss. *See Gipson*, 150 P.3d at 231, ¶¶ 16-17.

***1. Avitia confirms the duty pleaded here.***

The Motion stakes its duty argument on the claim that *Avitia* "concluded" that a mental health provider owes third parties a duty only when the patient has communicated an explicit threat against an identified victim under A.R.S. § 36-517.02(A). Mot. at 7 (citing *Avitia*, ¶ 30). That is not what *Avitia* held. The passage the Motion cites, paragraph 30, is background recitation; it recites the text of a statute the legislature enacted in 1989. The court's principal holding comes ten paragraphs later: "[a]lthough no foreseeability-based duty exists, . . . a limited duty of mental health professionals to third parties exists in certain circumstances under statute and common law . . . ." *Avitia*, 536 P.3d at 784, ¶ 40.

The court then identified those circumstances. It noted that "[a] common law duty may be found in parts of the Restatement," which Arizona courts "generally follow . . . unless it conflicts with Arizona law." *Id.* at 785, ¶ 43 (quoting *Quiroz*, 416 P.3d at 834, ¶ 41). The court pointed to Restatement (Second) of Torts § 324A, which "recognizes a duty to third parties under specified circumstances where a person 'undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person,'" and to Restatement (Third) of Torts § 41(a), under which "[a]n actor in a special relationship with another owes a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

relationship." *Id.* Moreover, it noted Restatement (Third) § 41(b)(4) "defines that applicable special relationship to include 'a mental-health professional with patients.'" *Id.* As for § 36-517.02, the Court refused to resolve whether it is even still viable, let alone held that it supplies the exclusive measure of a provider's duty. *See id.* at 784-85 ¶¶ 40-43.

Applied here, *Avitia* supports the duty the FAC pleads. The Army's own physicians treated Hunt's psychiatric conditions for nearly a decade, prescribed his sertraline and his amphetamine, and were obligated to monitor a medication regimen that toxicology later showed was badly out of bounds. FAC ¶¶ 27, 34-42. A mental health professional stands in a special relationship with a patient, and such a relationship carries "a duty of reasonable care to third parties with regard to risks posed by the other that arise within the scope of the relationship. *Avitia*, 536 P.3d at 785, ¶ 43. That a "known and tangible risk of harm" arose within that relationship, *see Dinsmoor v. City of Phoenix*, 492 P.3d 313, 319, ¶ 24 (Ariz. 2021), is exactly what the FAC pleads: a patient on a contraindicated combination of psychiatric medications, with documented heavy alcohol use, denying suicidal ideation "despite reporting" matters the Army redacted, while staging weapons in plain view. FAC ¶¶ 28, 42-46, 53-56. *Avitia* affirmed summary judgment because:

> [Defendant] complied with its statutory duty under § 36-531 by petitioning for involuntary treatment for Mother based on its evaluation. Following an evidentiary hearing, the court concluded that Mother was a danger to herself but not to others, and then ordered combined inpatient and outpatient treatment. [Defendant] played no further role following that court order.

536 P.3d at 785, ¶ 44. Here, in contrast, the Army did not take the protective action that was required under the circumstances.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

***2. The Army's voluntary undertakings independently create a duty.***

Arizona recognizes duties that arise from "conduct undertaken by the defendant." *Gipson*, 150 P.3d at 232, ¶ 18 (citing *Stanley v. McCarver*, 208 Ariz. 219, 221, ¶ 7 (Ariz. 2004)). In *Stanley*, the supreme court held that a radiologist who undertook to review an x-ray owed a duty of care even with no traditional doctor-patient relationship, reasoning that "public policy is better served by imposing a duty in such circumstances to help prevent future harm . . . ." 208 Ariz. at 224-25, ¶¶ 13-15 (discussing Restatement (Second) § 324A). The Army undertook a great deal here: mandatory post-deployment behavioral health screenings, a decade of psychiatric treatment, and the prescribing and tracking of controlled psychiatric medications through its own Military Health System. FAC ¶¶ 23-27, 34-42. Those undertakings were services the Army should have recognized as necessary for the protection of third persons, and they carried a duty to perform with reasonable care.

The Supreme Court's decision in *Sheridan v. United States*, 487 U.S. 392 (1988), confirms that this theory fits a servicemember shooting. There, naval corpsmen encountered an off-duty serviceman who was visibly drunk and armed, and fled rather than restrain or report him; he then shot into the plaintiffs' car. *Id.* at 394-95. The Court held that "by voluntarily adopting regulations that prohibit the possession of firearms" and "by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to 'perform [its] "good Samaritan" task in a careful manner.'" *Id.* at 401 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 65 (1955)). Liability in such a case "is entirely independent of [the shooter's] employment status," and "it would seem perverse to exonerate the Government because of

the happenstance that [the shooter] was on a federal payroll." *Id.* at 401-02. This Court's prior Order set *Sheridan* aside because the intentional tort exception was not at issue and because *Sheridan* assumed that state law otherwise supplied liability. ECF No. 24 at 8:2-5. But Plaintiff does not cite *Sheridan* for the intentional tort exception. He cites it because the FAC now pleads the very predicate *Sheridan* described: voluntarily adopted regulations restricting weapons access, AR 190-11, and a voluntary undertaking of care, a decade of it, which was negligently performed. FAC ¶¶ 27, 61-70. Arizona law supplies the negligent undertaking tort, *Stanley*, 208 Ariz. at 221-25, ¶¶ 7, 13-15; *Avitia*, 536 P.3d at 785, ¶ 43, so the assumption in *Sheridan* that state law liability also existed holds here too.

Similarly, reliance on *Wertheim v. Pima County*, 122 P.3d 1 (Ariz. App. 2005) is misplaced. *Wertheim* addressed one theory: an employer's duty under Restatement (Second) §§ 315 and 317 to control an off-duty employee, which applies "only when the employee is on the employer's premises or using the employer's chattel." *Id.* at 4, ¶ 12. Plaintiff's duty theories do not depend on § 317. A treating provider's special relationship under § 41(b)(4) and a negligent undertaking under § 324A do not turn on where the patient was standing when the harm occurred; they turn on the relationship and the undertaking, and on whether the risk arose within their scope. *See Avitia*, 536 P.3d at 785, ¶ 43; *Dinsmoor*, 492 P.3d at 319, ¶¶ 23-24 (special relationship duty reached harm occurring outside the school's supervision because the risk arose within it).

**B. <u>The FTCA's Private Person Analogue Is Satisfied.</u>**

The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The words

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphasis in original) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). Because "the federal government 'could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.'" *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)).

In this Court's prior Order, it analogized the United States to an employer and Hunt to an employee, and observed that "Arizona law recognizes a tort for negligent supervision, hiring, or training that [applies] to a private person." ECF No. 24 at 5:3-5 (quoting *Charley v. United States*, 437 F. Supp. 3d 745, 750 (D. Ariz. 2020)). *Charley* itself declined to dismiss an FTCA negligent supervision claim on precisely this ground. *See* 437 F. Supp. 3d at 750-51. The analogies have only grown stronger with the FAC. Private mental health providers owe the third-party duties described in *Avitia*. *See* 536 P.3d at 784-85, ¶¶ 40-44. Private physicians and radiologists owe the undertaking-based duties described in *Stanley*. *See* 92 P.3d at 853-54, ¶¶ 7, 13-15. And a private "good Samaritan" who undertakes protective tasks must perform them with care. *Olson*. *See* 546 U.S. at 46-47 (discussing *Indian Towing*). The Motion's contrary argument reduces to the demand that Plaintiff identify a private entity in *identical* circumstances. *Olson* forecloses that demand, 546 U.S. at 46-47, and *Dugard* failed only because California law rejected any duty on the analogous facts, *see* 835 F.3d at 918-19; Arizona law, as shown above, does not, *see* **§ IV(A)**, *supra*.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### C. <u>The Discretionary Function Exception Does Not Bar This Action.</u>

The DFE analysis proceeds in two steps: first, whether the challenged conduct "involve[s] an element of judgment or choice," and if so, whether such judgment is "of the kind that the discretionary function exception was designed to shield." ECF No. 24 at 7:6-9 (quoting *Kelly v. United States*, 241 F.3d 755, 760 (9th Cir. 2001)). The United States bears the burden at both steps. *See Prescott*, 973 F.2d at 701-02. The FAC defeats the exception at each one.

#### ***1. Mandatory directives eliminated the Army's discretion.***

The exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). When this Court dismissed the original Complaint, it faulted Plaintiff on three grounds: the cited regulations were general, they were not identified in the Complaint, and the Complaint did not plausibly allege notice. ECF No. 24 at 7:18-23. The FAC answers all three. The regulations are now pleaded in the complaint itself, by name, paragraph, and operative text. FAC ¶¶ 61-70. They are not general aspirations: AR 40-501 ¶ 3-3 provides that soldiers with a qualifying condition "*will* be referred to DES." *Id.* ¶ 63 (emphasis added). "*Will* be referred" is a command, not a suggestion; it "specifically prescribes a course of action." *See Berkovitz*, 486 U.S. at 536. And notice is now pleaded through the Army's own records: a decade of psychiatric treatment by Army providers, Army-issued prescriptions requiring mandatory monitoring, and behavioral health screenings mandated after each deployment. FAC ¶¶ 23-28, 34-42.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

The Ninth Circuit has applied exactly this analysis to exactly these regulations. In *Sigman v. United States*, 217 F.3d 785 (9th Cir. 2000), survivors of a mass shooting by a recently discharged airman sued the United States for negligence in his enlistment, retention, and discharge. The court held that AR 40-501's medical fitness procedures applied and were such that "[t]he government's threshold claim of sovereign immunity on the ground of discretionary function must fail because *the applicable regulations and internal directives denied the treating physician and reviewing officer the discretion*" to act as they did. *Id.* at 795 (emphasis added). It likewise held that claims that the military violated mandatory fitness and discharge regulations in returning the shooter to duty and releasing him could proceed, because "the government cannot rely on the discretionary function exception to defeat plaintiffs' claim that the government negligently violated this *mandatory* duty." *Id.* at 797-98 (emphasis added). The same regulations, invoked by a plaintiff injured by the same kind of catastrophic failure, defeat the same threshold immunity claim here.

***2. Medical monitoring is professional judgment, not protected policy.***

"[T]he discretionary function exception was designed to shield" judgment "grounded in social, economic and political policy." *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991) (internal citation and quotation marks omitted). The diagnosis, treatment, and monitoring of a mentally ill patient is not that kind of judgment. *Sigman* is again on point: the DFE "is intended to shield the government from liability for the exercise of *governmental* discretion, not to shield the government from claims of garden-variety *medical malpractice*." 217 F.3d at 795 (emphasis added). Claims that Air Force physicians

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

failed to properly diagnose and treat the shooter involved "a function that is analogous to functions performed by professionals in the private sphere every day: the diagnosis and treatment of mentally ill individuals. *The governmental discretion exception should not apply*." *Id.* at 795-96 (emphasis added). The FAC's core allegations are of that character: Army prescribing physicians who knew Hunt's diagnoses and his medication regimen, who were clinically obligated to monitor the dangerous interaction of an SSRI, a Schedule II stimulant, and documented heavy alcohol use, and who failed to act on what their own records showed. FAC ¶¶ 34-46, 71, 98.

Ultimately, "once the Government has undertaken responsibility for the safety of a project, the *execution* of that responsibility is *not* subject to the discretionary function exception," and "[t]he Government cannot claim that both the decision to take safety measures *and the negligent implementation* of those measures are protected policy decisions," because "[t]h[at] argument would essentially allow the Government to 'administratively immunize itself from tort liability under applicable state law as a matter of "policy."'" *Marlys Bear Medicine v. United States*, 241 F.3d 1208, 1215 (9th Cir. 2001) (emphasis added). The Army adopted post-deployment screening protocols, prescription monitoring obligations, and weapons-restriction authority precisely as safety measures. FAC ¶¶ 23-24, 38-42, 67-68. Having adopted them, it was not free to execute them negligently and call the failure policy.

The Motion's contrary authorities do not carry its burden. Its string of hiring, training, and supervision cases states a general rule for discretionary personnel decisions; none involved a specific mandatory directive like AR 40-501 ¶ 3-3, and none involved the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

government's own treating physicians. *Sigman* addressed both and allowed the claims to proceed. *See* 217 F.3d at 793, 795-98. At a minimum, whether the identified directives applied to Hunt and were violated is a factual question that cannot be resolved against Plaintiff on a facial motion, where his allegations are accepted as true. *See* ECF No. 24 at 4:4-10.

**D. <u>In the Alternative, Leave to Amend Should Be Granted.</u>**

If the Court concludes the FAC falls short in any respect, Plaintiff requests leave to amend. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumptio*n under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (citing Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 245 (5th Cir. 1997)). Discovery has not begun, no schedule would be disturbed, and the Army, not Plaintiff, holds the unredacted records that would answer any remaining questions about what its personnel knew.

## V. <u>CONCLUSION</u>

The FAC pleads a duty Arizona law recognizes, a private person analogue this Court has already identified, and specific mandatory directives that strip the discretionary function exception of its premise. The Court should deny the Motion in its entirety. In the alternative, the Court should grant Plaintiff leave to amend.

///

///

///

///

**RESPECTFULLY SUBMITTED** this 28th day of August 2026.

**MILLS + WOODS LAW, PLLC**

By *__/s/ Sean A. Woods__*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Neil Singh
neil.singh@usdoj.gov
casey.edwards@usdoj.gov
CaseView.ECF@usdoj.gov
**UNITED STATES ATTORNEY**
**DISTRICT OF ARIZONA**
Two Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4449
(602) 514-7500
*Attorneys for Defendant United States*

*__/s/ Ben Dangerfield__*



MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556