TIMOTHY COURCHAINE
United States Attorney
District of Arizona
NEIL SINGH
Assistant United States Attorney
Arizona State Bar No. 021327
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
neil.singh@usdoj.gov
*Attorneys for Defendant United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Raul Mendez,<br>Plaintiff,<br>v.<br>United States of America,<br>Defendant. | No. 2:25-cv-01048-SMB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

Defendant replies as follows in support of its Motion to Dismiss the First Amended Complaint (FAC), to which Plaintiff has now filed a Response. Docs. 39, 42. Defendant notes that it has filed a motion requesting the Court's consent to file this brief on today's date of October 16, 2026, with no objection from Plaintiff, that the Court has not yet ruled on. Doc. 43.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Plaintiff's duty analysis is meritless.

Despite failing to state a claim under Arizona law with his original Complaint, and seeing the government's arguments as to why the FAC continues to fail to state a claim, Plaintiff's response brief *still* lacks a cohesive argument. As detailed below, Plaintiff does not identify for the Court any particular tort theory out of the many available that he believes is his clearest explanation for the premise of this case. For example, he appears to now concede

that it is not possible to sue the Army under Arizona's employer-liability theory of tort. *Wertheim v. Pima County*, 122 P.3d 1, 2, ¶ 2 (Ariz. Ct. App. 2005) (rejecting the employer-liability theory of tort in a shooting case). Plaintiff's only mention of *Wertheim* is on page 9 of his brief, where Plaintiff merely states that *the government's* reliance on *Wertheim* is misplaced. Doc. 42 at 9. Since Plaintiff provides no elaboration, it appears obvious that Plaintiff is simply not attempting to rely on any tort theories that a random act of gun violence by an employee can be the fault of the employer, as applied to the facts here where Jason Hunt was the employee and the Army was the employer.

Plaintiff also appears to agree with the government that Plaintiff cannot proceed on a tort theory that Hunt's actions occurred on Army property, judging by Plaintiff's decision not to mention that point in his brief at all, or the case that supports it. *Martinez v. Woodmar IV Condo. HOA, Inc.*, 941 P.2d 218, 219 (Ariz. 1997) (shooting occurred in parking lot of the defendant condo association). Similarly, Plaintiff also agrees through his silence that he cannot proceed on the tort theory that the Army failed to dispatch security to somehow stop the shooting, which were the facts in *Hutcherson v. City of Phoenix*, 961 P.2d 449, 450-51 (Ariz. 1998). Plaintiff does not mention *Hutcherson* in his brief even though the government did in its brief. Doc. 39 at 5.

Plaintiff ultimately cites three cases as forming the foundation of this theory, none of which have any bearing on the alleged facts here whatsoever. He first claims that the Arizona Supreme Court's *narrowing* of tort duties in *Avitia* somehow "*confirms* the duty pleaded here." Doc. 42 at 6 (emphasis added). *Avitia v. Crisis Prep. & Recovery Inc.*, 536 P.3d 776 (Ariz. 2023). This argument bears no nexus to the court's actual holding and plainly misunderstands it. *Avitia* arose from the deaths of two children at the hands of their mentally ill mother. *Id.* at 778-80, ¶¶ 2-11. Prior to their deaths, mental health professionals had evaluated the mother, as well as other medical providers, and a state court judge who issued rulings on an involuntary commitment action. *Id.* The plaintiffs sued the mental health professionals on these facts, an Arizona Superior Court dismissed the action on summary judgment, and the Arizona Supreme Court affirmed the dismissal. *Id.* at 785, ¶ 47.

In affirming the dismissal, the Arizona Supreme Court rejected an older line of Arizona cases that had allowed for tort duties to be decided based on a fact-intensive foreseeability test. *Id.* at 783, ¶ 33 ("a 'fact-specific analysis of the relationship between the parties is a problematic basis for determining if a duty of care exists…'") (quoting *Gipson v. Kasey*, 150 P.3d 228 (Ariz. 2007)). Having rejected the foreseeability test, the Arizona Supreme Court held that duties in tort to third parties may be defined only according to two sources: public policy, and common law. *Id.* at 784-85, ¶¶ 40-43. Contrary to Plaintiff's assertion, this *narrowed* the authority of Arizona courts to identify scenarios in which a duty in tort to a third party existed, because Arizona courts may no longer apply a foreseeability test to find any such duties. *Id.* The *Avitia* court concluded its opinion by confirming that the mental health professionals owed no duties in tort to the children. *Id.* Plaintiff's argument that this conclusion somehow supports his arguments here is at best a serious misunderstanding of the holding.

Arizona courts that have applied *Avitia* since its publication reinforce this point. "Under Arizona law, a duty is established through either 'special relationships or public policy, and we look primarily to statutes and common law to create and define duty.'" *Doe I by & through Fleming & Curti PLC v. Warr*, 566 P.3d 342, 347 (Ariz. Ct. App. 2025), *rev. granted* (Jan. 6, 2026) (quoting *Avitia*, *supra*). "Generally, the common law rule is that no one is legally bound to act for the benefit of, or to protect, another." *Warr*, 566 P.3d at 347. But as to the relationship between a Sunday school teacher and children at his church, the Court of Appeals found that there was no duty in tort. *Id.* at 348, ¶ 13 ("We similarly cannot conclude, and the Does have not sufficiently shown, that the role of a Sunday school teacher imparts a common law duty to protect similar to that of an elementary or a grade school teacher with a recognized special relationship to his or her students."). The Arizona Court of Appeals reached virtually the same conclusion in *Lenzner*, decided a few months apart from *Warr*. *Doe I by and through Fleming and Curti, PLC v. Lenzner Medical Services, LLC*, 570 P.3d 977 (Ariz. Ct. App. 2025) ("There is no common law duty to control the conduct of a third person so as to prevent harm from befalling another.") (quoting *Collette v. Tolleson Unified Sch. Dist., No. 214*, 54 P.3d 828 (Ariz. Ct. App. 2002)). A common law duty to protect a third person may arise from a special

relationship, the court held, but such a duty did not arise between a medical doctor and the children of his patient, where the patient informed the doctor that the children were being abused. *Lenzner*, 570 P.3d at 986, ¶ 32.

Plaintiff's second case in support of his theory is *Stanley v. McCarver*, 92 P.3d 849 (Ariz. 2004) (cited at Doc. 42 at 8). Plaintiff's reliance on this case is mystifying: *Stanley* arose from a medical malpractice claim against a radiologist evaluating a chest x-ray for purposes of a pre-employment tuberculosis screening. *Id.* at 850, ¶ 1. The plaintiff had not formed a doctor-patient relationship with the radiologist, so the issue decided on appeal was whether the radiologist nonetheless owed a duty of care to the employment examinee to diagnose a small nodule that turned out to be lung cancer. *Id.* at 850-51, ¶ 2. The Arizona Supreme Court concluded that further discovery was needed to inform the trial court on the nature of the relationship between the doctor and the examinee, and that the absence of a formal doctor-patient relationship was not the sole determining factor. *Id.* at 856, ¶ 23. This case has no bearing on the alleged tort duty at issue here: the radiologist examining the examinee did not fail to protect any third party. The alleged harm arose from the radiologist's possible breach of a duty to the examinee alone. *Id. Stanley* is irrelevant to the analysis here.

Finally, Plaintiff again attempts to resurrect his already-debunked citation to a U.S. Supreme Court decision that this Court has already recognized has no applicability here either. *Sheridan v. United States*, 487 U.S. 392 (1988). The Court dispatched this argument in its previous ruling and Plaintiff does not even attempt to explain why the Court committed any error in doing so:

> The Court briefly addresses Plaintiff's reliance on *Sheridan v. United States*, 487 U.S. 392 (1988). Plaintiff contends that this case establishes "that the negligence of U.S. service personnel in allowing a foreseeable violent act to be committed by an off-duty soldier may furnish a basis for U.S. liability to the victim." (Doc. 18 at 5.) While Plaintiff may be correct, *Sheridan* does not compel a certain outcome here. At bottom, *Sheridan* helped define the scope of the intentional tort exception to the FTCA. *See* 487 U.S. at 394. Defendants do not invoke this exception here. Additionally, *Sheridan* assumed that liability otherwise existed under Maryland law. *Id.* at 401. Here, the primary question is whether Plaintiff established a basis for liability under Arizona law in the first instance. *Sheridan* does not bear on that question or

> otherwise upset this Court's conclusion that the Complaint fails to establish a viable theory for tort liability under Arizona law.

Doc. 24 at 7-8. As the Court correctly recognized, the Supreme Court's holding in *Sheridan* was an interpretation of the Federal Tort Claims Act statute. It was simply not an interpretation of Arizona law that has any bearing here. Plaintiff, in sum, has failed to identify any duty of tort under the state law of Arizona that applies to the United States for the shooting by Jason Hunt. On this ground alone, the Court should dismiss this action.

**B. <u>Plaintiff's private person analogue argument cannot decide which tort theory to adopt.</u>**

Just as Plaintiff fails to identify any clear duty in tort as a general matter for this case, he repeats that lack of clarity when addressing the private person analogue. Plaintiff first suggests that the analogue at issue should be that of an employer to an employee (Doc. 42 at 10), even though Plaintiff wholly abandoned and waived any legal arguments regarding the employer-employee tort theory when he ignored the government's discussion of *Wertheim*, 122 P.3d at 2. Plaintiff next mentions private mental health providers who owe duties to third parties (Doc. 42 at 10), but if this is his analogy of choice, it fails for the reasons analyzed above. Plaintiff finally mentions "a private 'good Samaritan' who undertakes protective tasks…" Doc. 42 at 10. Plaintiff provides no further explanation of how this analogy fits here: If a Good Samaritan owes a duty to a person the Samaritan has chosen to aid, who was that person in the facts here? If it was Plaintiff himself, does Plaintiff argue that the United States Army was rendering aid to Plaintiff on the night in question? These are unanswered and unanswerable questions. Plaintiff's analogy to a Good Samaritan is baseless.

**C. <u>Plaintiff's DFE argument is meritless.</u>**

Plaintiff relies on the Ninth Circuit's decision in *Sigman v. United States* to argue that he has properly asserted a claim that survives the Discretionary Function Exception (DFE).[1] 217 F.3d 785 (9th Cir. 2000). In *Sigman*, the individual who carried out a mass shooting had,

---

[1] The government notes that the Court need not even reach the DFE issue if it agrees with the government on either the issue of (1) Plaintiff's failure to state a claim under Arizona law, or (2) the FTCA's private person analogue. Either one of these three issues is an independent basis on which the Court may dismiss this action.

during his enlistment with the military and prior to the shooting, threatened to set fire to his roommate, stared at walls for odd periods of time, masturbated in his roommate's presence, rode a bicycle on a golf course, and gave conflicting answers about his medical history upon joining the military. *Id.* at 790-92. The Ninth Circuit held that some of the plaintiffs' liability theories were barred by the DFE while others were not. It held, for example, that the DFE barred the theory that the Air Force had a duty to warn medical personnel on the base where the shooting occurred that the shooter was being released from the Air Force. *Id.* at 796 ("the Air Force's decision not to warn Fairchild Air Force Base of Mellberg's release, though ill advised, brought into play sensitive and competing policy considerations of protecting safety while preserving resources and preventing unwarranted alarm for military employees."). The Ninth Circuit also concluded that the appropriateness of various security measures at the base was also protected by the DFE. *Id.* at 797.

As to other theories advanced by the plaintiffs, the Ninth Circuit declined to invoke the DFE to bar those claims, in part explaining that "professional or occupational discretion" is not necessarily akin to governmental discretion. *Id.* at 796. The differences between the facts at issue in *Sigman* compared to the alleged facts here, even assuming them to be true, however, are vast. The shooter in *Sigman* engaged in a long history of bizarre and at times violent conduct prior to the shooting, which occurred on the very base that the shooter was stationed at. Plaintiff points to no such history here, except to state merely that Jason Hunt was "a combat veteran of Iraq and Afghanistan," that he staged a table at his home displaying guns, and that he posted things on Instagram—none of which contained any threatening language to the public, much less to Plaintiff, Plaintiff's family, or Plaintiff's home. Doc. 42 at 3-4.

The government's point about the DFE is one that specifically applies to the legal theories Plaintiff has chosen to assert in his lawsuit. Plaintiff vaguely claims that the Army engaged in conduct analogous to negligent hiring, negligent supervision, and negligent training. Doc. 25 at 16. These claims, the Ninth Circuit held very close in time to its decision in *Sigman*, "usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).

Plaintiff has not asserted, as the plaintiffs in *Sigman* asserted, that specific psychologists failed to perform mandatory actions that actually resulted in the shooting. He has instead asserted the general tort theories of negligent hiring, supervision, and training.

In an effort to identify mandatory courses of action that would, if appropriately located, defeat the DFE, Plaintiff points to language in an Army regulation, AR 40-501, that he states is indeed mandatory. Doc. 42 at 11. But pointing to merely mandatory language is inadequate. Any policy language of a federal institution containing hundreds of pages is going to include vocabulary that qualifies as "mandatory" in nature. The question is whether the Army failed to follow the mandatory action, which caused the tort. Plaintiff claims that there is a "decade of psychiatric treatment by Army providers," and argues without explanation that soldiers with a particular condition "will be referred to DES." Doc. 42 at 11. But no causation is alleged, because Plaintiff fails to allege, even with the generous assumption of truth being assigned to his allegations, that any particular "referral to DES" had a causal link to Hunt's random act of gun violence at Plaintiff's home. This lack of specificity is insufficient to overcome the Congressional choice to protect the government against liability claims for governmental operations. Plaintiff's action is, therefore, additionally barred by the DFE.

**D. <u>Plaintiff is not entitled to again amend the Complaint.</u>**

Plaintiff has now failed to properly state a tort claim under Arizona law twice, first through his Complaint and again through the FAC. The parties have thoroughly briefed the full extent of Arizona tort law as applied to shooting claims in which third parties were injured. The Court should dismiss this action with prejudice, having allowed Plaintiff a full opportunity to amend his complaint in an effort to pursue any available legal theories.

For the reasons stated, the United States respectfully requests that this action be dismissed with prejudice.

Respectfully submitted on October 16, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

s/*Neil Singh*

NEIL SINGH
Assistant United States Attorney
*Attorneys for Defendant United States*